RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 10 / 17 / 12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISIONP

| | |
|---|---|
| PATRICK NEWTON GREEN | CIVIL ACTION NO. 1:11-CV-2182 |
| VERSUS | JUDGE DRELL |
| DELMER MAXWELL, ET AL. | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Pro se Plaintiff, Patrick Newton Green, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections, and he is incarcerated at David Wade Correctional Center in Homer, Louisiana. He complains that he was denied adequate medical care and subjected to retaliation.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. *For the reasons that follow, it is recommended that all claims be denied and dismissed, except for Plaintiff's retaliation claim against Warden Stephenson regarding his transfer to David Wade Correctional Center.*

### *Plaintiff's Allegations*

Plaintiff alleges that on August 19, 2010, he arrived at Hunt Correctional and was examined by the medical doctor. Plaintiff alleges that he had been experiencing bleeding from the rectum. Plaintiff was scheduled for a colonoscopy on an unspecified date

On September 13, 2010, Plaintiff was transferred to Winn

Correctional Center. Two days later, he was examined by Dr. Cleveland, who informed Plaintiff that he was scheduled "for surgery" at some point that month. [Doc. #1-2, p.1]

On September 22, 2010, Officer Hamilton transported Plaintiff to E.A. Conway Medical Center in Monroe for a colonoscopy. However, he was informed that the procedure could not commence because Plaintiff had not been properly prepared. [Doc. #1-2, p.2]

On September 9, 2010, Plaintiff went before the review board. Warden Stephenson was "about to release" Plaintiff into the general population, but Virgil Lucas said, "Don't release him because he kept us in court." Plaintiff claims that he was then denied release into the general population. [Doc. #1-2, p.2, 3]

On October 22, 2010, Plaintiff stopped Lt. Mary Hayes to inform her that he needed to make a medical emergency due to blood, puss, and a foul smell emitting from his ear. He was referred to Nurse Brunson, who denied medical assistance.

On October 25, 2010, Plaintiff threatened to file suit against Winn, so Officer Willis got Nurse Brunson to examine Plaintiff. Because Plaintiff's ear was infected, Dr. Cleveland prescribed antibiotics.

On July 25, 2011, Plaintiff was called to the mail room to sign for a legal document. He was asked to open the package, which contained five twenty dollar bills, each one taped to the back of each page in the package. Plaintiff was escorted to the chief

security officer's office.

Plaintiff alleges that on August 25, 2011, LPN Adam Howard initialed Plaintiff's medical records as though he had administered medication to Plaintiff when he had not. Although Plaintiff alleges this was an act of retaliation, he also alleges that this was done by LPN Howard because he was simply too lazy to bring Plaintiff's medications to him in the recreation yard.[1] [Doc. #1-2, p.10]

On September 7, 2011, Plaintiff went before the review board again. Plaintiff alleges that Warden Stephenson was angry with him for making accusations against Mr. Howard.

Plaintiff claims that on September 12, 2011, he asked the attorneys Ross Owen and Jeananne Self, who were representing Plaintiff in another matter before this Court, to contact Judge Drell for a warrant to obtain security video to prove that Plaintiff had not received medication from the LPN.

Plaintiff filed an administrative grievance, which was denied because it contained multiple complaints in one grievance. [Doc. #13-1, p.8]

### Law and Analysis

**I. Medical Care**

Plaintiff's first complaint regarding medical care centers on

---

[1] Plaintiff states that other officer will bring the medications to the inmates in the rec yard because pill call and recreation sometimes occur at the same time.

his not having been properly prepped for a colonoscopy, which was set to occur on September 22, 2010. [Doc. #1-2, p.2] His second complaint regarding medical care involves the treatment of his ear infection in October 2010.

District courts are authorized to dismiss a complaint as frivolous when "it is clear from the face of a complaint filed in forma pauperis that the claims asserted are barred by the applicable statute of limitations." Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994); Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period sua sponte. See Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

There is no federal statute of limitations. Accordingly, the forum state's statute of limitations for general personal injuries is used in civil rights claims. See Lopez-Vences v. Payne, 74 Fed. Appx. 398 (5th Cir. 2003). In Louisiana, that limitations period is one year. Federal law is used to determine when a cause of action accrues. Id. "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." Piotrowski, 51 F.3d at 516, quoting Vigman v. Community National Bank and Trust Co., 635 F.2d 455, 459 (5th Cir. 1981).

Although equitable tolling principles apply to civil rights

cases for the time spent exhausting administrative remedies[2], Plaintiff did not submit his administrative grievance until November 21, 2011, after the limitations period had already expired. #13-1, p.20] Thus, the limitations period pertaining to those claims was not tolled, and the claims are prescribed.

Even if the claims were not prescribed, Plaintiff has not alleged that the defendants deliberately failed to prepare him for a colonoscopy or that they intended to cause him harm. He has alleged negligence, at best, which does not state a claim under Section 1983. As for his ear infection, Plaintiff received antibiotics just three days after requesting that he be examined. This delay is not unreasonable, and Plaintiff has not provided non-conclusory allegations of deliberate indifference with regard to that claim, either.

## II. Review Board

On September 9, 2010, Plaintiff went before the review board. Plaintiff claims that Warden Stephenson was "about to release" him into the general population, but because Virgil Lucas said, "Don't release him because he kept us in court," the warden did not

---

[2]See Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002) (holding that because the PLRA requires a prisoner to exhaust his administrative remedies, the prisoner is entitled to equitable tolling of the applicable limitations period while he exhausts the remedies) & Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999) (holding that the statute of limitations applicable to a civil rights complaint should be tolled while the prisoner exhausts his administrative remedies).

release Plaintiff. [Doc. #1-2, p.2, 3] Plaintiff argues that the Warden and Virgil Lucas acted in retaliation for having filed and settled two prior suits against personnel at Winn Correctional Center[3]. This review board meeting occurred on September 9, 2010. Neither Plaintiff's lawsuit nor his administrative grievance were filed until over a year later. Thus, prescription was not tolled on his claim, and it is prescribed.

## III. Retaliation

To state a claim of retaliation, a prisoner must allege: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).

### A. Receipt of Cash

Plaintiff received a disciplinary charge for receiving cash in the mail. He argues that, in retaliation for reporting LPN Howard's "fraud," the defendants "intentionally conspired to build an unjust case against him that holds no truth nor based on foundation of truth...." [Doc. #13, p.2] This claim must fail because the mail room incident for which he was written up occurred on July 25, 2011, a month *before* the incident with LPN Howard. Thus, the former event could not have been in retaliation for an

---

[3]Plaintiff settled civil rights cases against Winn Correctional employees on March 28, 2008 and September 2, 2011.

event that had not yet occurred. To the extent that Plaintiff claims that the write up was in retaliation for having "won" settlements in two prior cases, this claim is also without merit. The first settlement took place in 2008 - three years prior to the disciplinary write-up for receiving cash in the mail. The second settlement to which Plaintiff refers had not yet occurred.

### B. Transfer to David Wade Correctional Center

Plaintiff claims that on October 17, 2011, about a month after settling a lawsuit against Winn staff, Warden Stephenson had Plaintiff transferred to extended lockdown at David Wade Correctional Center as retalation. Plaintiff's retaliation claim against Warden Stephenson regarding the transfer to DWCC will be served on the warden for further proceedings.

### *Conclusion*

For the forgoing reasons, **IT IS RECOMMENDED** that Plaintiff's claims be **DENIED AND DISMISSED** with prejudice *__except for his retaliation claim against Warden Stephenson regarding the transfer to extended lockdown at David Wade Correctional Center__*.

**Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days**

after being served with a copy of any objections or response to the district judge at the time of filing. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. USAA, 79 F.3d 1415 (5th Cir. 1996).

Thus done and signed at Alexandria, Louisiana, this 16th day of October, 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE